IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01395-DME

JOSEPH BENJAMIN TRUJILLO,

    Applicant,

v.

LISA SAILER, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

David M. Ebel, Senior Circuit Judge.

    This matter is before me on Applicant Joseph Benjamin Trujillo's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (Docket No. 7). Respondents answered the Application (Docket No. 19). Applicant did not file a Reply. Because Applicant is proceeding *pro se,* I must construe his pleadings liberally and hold him to a "less stringent standard." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)). After reviewing the pertinent portions of the record in this case including the Application, the Answer, and the state court record (Docket No. 20), I conclude that the Application should be denied.

**I.      Background**

The state appellate court summarized the facts leading to Applicant's conviction as follows:

> Defendant's next-door neighbor testified to the following at trial: From his back porch, he heard growling and barking from the back yard next door. He saw defendant pick up a dog by the scruff of the neck and go around to the back of the neighbor's house near his dumpster. He saw defendant swing a shovel multiple times, and heard the dog scream a couple of times before it was silent. After defendant went inside, he went out to the dumpster and found a dead dog in it. He reported the incident to authorities.
>
> An animal control officer testified that when he examined the dead dog, he found that its skull and teeth had been fractured. A police officer testified that he searched defendant's backyard, and found a shovel which appeared to have hair and blood on it.

*People v. Trujillo*, 08CA1614 at 2 (Colo. App. July 29, 2010) (unpublished opinion) (Answer at Ex. A).

Applicant was found guilty by a jury of one count of aggravated cruelty to animals, and the trial court found that he had three prior felony convictions. Answer at 2. The trial court subsequently sentenced him to six years in the custody of the Colorado Department of Corrections. *Id.*

Applicant filed a direct appeal of his conviction to the Colorado Court of Appeals. On July 29, 2010, the Colorado Court of Appeals affirmed the judgment and conviction. *See Trujillo*, 08CA1614 at 11. The Colorado Supreme Court denied certiorari review on November 15, 2010. *See* Pre-Answer Resp. at Ex. D.

Applicant initiated the instant action in this Court on June 14, 2011. Applicant asserts three claims for relief: (1) The trial court should have appointed him "conflict free" counsel because his counsel failed to show him the discovery in his case, and

failed to test a shovel used as evidence for the presence of blood or fingerprints; (2) His trial was unfair because he was not allowed to personally cross examine witnesses; and (3) The trial court improperly allowed the prosecution to present bad character evidence to demonstrate that Applicant did not like dogs.

On July 1, 2011, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies. Respondents filed their pre-answer response on July 15, 2011. In the pre-answer response, Respondents conceded that the action was timely under 28 U.S.C. § 2244(d). However, Respondents argued that Applicant had failed to exhaust several of his claims in the state courts, and that these claims were procedurally defaulted. Applicant did not file a reply.

On September 7, 2011, I entered an order dismissing Applicant's second and third claims as unexhausted and procedurally defaulted. Nonetheless, finding that Applicant's remaining claim (Claim One) had been exhausted in the state courts, I ordered Respondents to file an Answer that fully addressed the merits of that claim.

**II.     Legal Standard**

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the Applicant is in custody in violation of the Constitution or laws or treaties of the United States. The court does not review a judgment, but the lawfulness of the Applicant's custody *simpliciter*." *Coleman v.*

*Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceeding in the Colorado Court of Appeals which was the final substantive proceeding in the state appellate review process.

Because the Application was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir.1999)). Under the AEDPA, a district court may only consider a habeas petition when the Applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The grounds for granting a writ of habeas corpus are very limited: "a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000) (citation omitted).

A state court decision is "contrary to" clearly established Federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'" *Price v. Vincent,* 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)).  A state court decision involves an "unreasonable application" of clearly established Federal law when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the Applicant's case.'" *Lockyer v. Andrade,* 538 U.S. 63, 75 (2005) (quoting *Williams,* 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . . The state court's application of clearly established law must be objectively unreasonable." *Id.* (citing *Williams,* 529 U.S. at 409-10, 412).  A "'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams,* 529 U.S. at 411).

Finally, when analyzing a petition, all determinations of factual issues by the state court are presumed to be correct and the Applicant has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

**III.    Discussion**

Claim One is the only claim remaining at issue in this action.

**A.   Claim One**

In his first claim, Applicant asserts that his Sixth Amendment right to counsel was violated when the trial court denied his request to dismiss the public defender and appoint alternate defense counsel. Applicant asserts that his attorney failed to show him the majority of the discovery from his case, and that she also failed to have a shovel used as evidence tested for the presence of finger prints and dog blood. Application at 5. He alleges that he was entitled to "conflict free" counsel, and the trial court abused its discretion by failing to appoint new counsel. *Id.*

In addressing this claim, the appellate court determined:

> We reject defendant's argument that the trial court abused its discretion by failing to appoint replacement counsel for him.
>
> "A defendant's motion to discharge an attorney is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on review absent an abuse of discretion." *People v. Bostic*, 148 P.3d 250, 259 (Colo. App. 2006).
>
> When a defendant expresses dissatisfaction with counsel, the trial court is obliged to inquire into the reason for the dissatisfaction. *People v. Bergerud*, 223 P.3d 686, 694 (Colo. 2010); *People v. Arguello*, 772 P.2d 87, 94 (Colo. 1989). If the defendant establishes "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict," then the court must appoint substitute counsel. *Arguello*, 772 P.2d at 94 (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2nd Cir. 1981)). A defendant must have some "well founded reason for believing that the
>
> appointed attorney cannot or will not completely represent him." *Bergerud*, 223 P.3d at 694 (quoting *Arguello*, 772 P.2d at 94).
>
> Prior to trial, defendant submitted a letter to the trial court requesting replacement defense counsel. At a pretrial hearing, the trial court inquired into defendant's reasons for the request. He stated that he (1) was not given discovery during his first two meetings with counsel; (2)

> felt "they" were trying to turn his wife against him; (3) believed his counsel was not representing his best interests; and (4) had been told by counsel that he was incompetent to go to trial, but had received no follow-up evaluations.
>
> Defense counsel also spoke at the hearing, and denied that there was a conflict. She indicated that defendant "continue[d] to want to have arguments . . . about what can happen at trial and [she had] indicated to him that [her] job as his attorney is to advise him." She stated that defendant had reviewed the discovery in the case.
>
> The trial court confirmed that defendant had seen the discovery in the case, and explained to him that defense counsel would have sought a competency evaluation if it had been appropriate. The court ruled that there was no conflict of interest, and indicated that defendant could hire his own attorney or represent himself pro se. Defendant indicated that he would accept his existing counsel.
>
> We discern no abuse of discretion in the trial court's determination that defendant did not establish a conflict of interest or a well founded reason for believing that his appointed attorney would not competently represent him. *See Bergerud*, 223 P.3d at 694; *see also People v. Schultheis*, 638 P.2d 8, 15 (Colo. 1981) ("As long as the trial court has a reasonable basis for believing that the lawyer-client relation has not deteriorated to the point where counsel is unable to give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel."). Defendant's complaints regarding counsel pertained to matters of trial preparation, strategy, and tactics, and thus he did not establish good cause for substitution of counsel. *People v. Kelling*, 151 P.3d 650, 653 (Colo. App. 2006); *People v. Garcia*, 64 P.3d 857, 864 (Colo. App. 2002). Moreover, he has not, on appeal, articulated any additional grounds for substitution that could have been discovered, had the trial court inquired further. *People v. Hodges,* 134 P.3d 419, 426 (Colo. App. 2005), *aff'd*, 158 P.3d 922 (Colo. 2007).

*Trujillo*, 08CA1614 at 3-5.

To warrant a substitution of counsel under federal law, a defendant "'must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *United States v.*

*Padilla*, 819 F.2d 952, 955 (10th Cir. 1987) (§ 2255 action) (citing *McKee v. Harris*, 649 F.2d 927, 931 (2nd Cir. 1981)); *see also United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir. 1992) (motion to withdraw on basis that defendant believed his attorney was intimidated by the court and could not continue to act zealously in his defense denied because defendant did not show a conflict of interest, a breakdown in communication, or an irreconcilable conflict).  However, there is no absolute right to counsel of one's choice.  *See United States v. Peister*, 631 F.2d 658, 661 (10th Cir. 1980).

At the pretrial hearing on February 14, 2008, the trial court addressed Applicant's request for alternate defense counsel.  Applicant stated the following:

> The Defendant: Okay.  The conflict that I feel that - - that I have with Ms. Phelicia is on the first day I met her she - - she forgot my discovery at her home, and I wasn't able to read it and then the sec - -
>
> The Court: But you since have gone over - -
>
> The Defendant: Well, the second time I met her right here in court she - -
>
> The Court: Uh-huh.
>
> The Defendant: - - showed me some photographs of a dead dog - -
> . . . .
>
> The Defendant: Well, the - - that - - that's all I seen is - - is just partial pieces of the discovery.  I wanted to review the whole discovery and - - because I feel like there's things in there that are  - - they're hiding something from me, and I want to see everything in the discovery.  I think I have a right to see what's in the discovery.
> . . . .
>
> Ms. Kossie-Butler: Judge, I have reviewed discovery with him.  I have seen him three times.  This case is just now set for a mandatory disposition.  I've visited him at the jail on three separate occasions.  He has reviewed the discovery, He has looked at - - he has asked for specific pieces to look at that we've - - I've highlighted for him, one of which was a statement from his wife and photographs and statements of the main eyewitness.  He has reviewed that.

> He continues to want to have arguments, if you will, about what can happen at trial and I have indicated to him that my job as his attorney is to advise him. He can take that advice or not, that is his free will, but I am not - - my job is not to come out here and try to convince him or debate him. So he has seen the discovery.
>
> . . . .
>
> The Court: Now, anything further regarding your representation?
>
> The Defendant: Well, Your Honor, I - - I feel like she's not representing me to the - - you know, to the best of my interest.
>
> The Court: Well, Mr. Trujillo - -
>
> The Defendant: if I can't - -
>
> The Court: Yes?
>
> The Defendant: If I can't get another attorney, I'll - - I'll accept her, but - - _
>
> The Court: Okay. Well - -
>
> The Defendant:  - - because I need to have some kind of representation.
>
> The Court: You should be thankful that you're represented by Ms. Kossie-Butler. She's a very competent attorney who tries many cases. She's tried many in front of me. I - - I know what she can do in the courtroom, so you're very, very lucky to have her at your side. I'm going to find that there is no conflict of interest . . . .

Transcript, 2/28/08, p. 2010-14.

To the extent Applicant argues that he had a conflict of interest with his attorney, a criminal defendant does have a Sixth Amendment right to conflict-free representation. *See Smith v. Massey*, 235 F.3d 1259, 1265 (10th Cir. 2000) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). In order to prevail on a claim that an attorney was ineffective because of a conflict of interest, a habeas applicant must show both that his trial attorney actively represented conflicting interests and that the conflict of interest adversely affected his attorney's performance. *See Cuyler*, 446 U.S. at 348. Where the

defendant makes a timely objection pointing out a conflict of interest, prejudice is presumed if the trial court fails to make an adequate inquiry into the situation and take appropriate steps. *Selsor v. Kaiser*, 22 F.3d 1029, 1032-33 (10th Cir. 1994) (citing *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978)). However, the mere possibility of a conflict of interest "is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350.

In this case, the record fails to demonstrate that Applicant's trial counsel actively represented conflicting interests. *Cuyler*, 446 U.S. at 350. Applicant vaguely asserts that he was entitled to "conflict free" counsel. Application at 16. This conclusory allegation, which is devoid of any supporting factual allegations, does not demonstrate a conflict of interest. Further, as required by *Selsor*, the trial court inquired into Applicant's request for alternate counsel, and allowed Applicant to speak freely regarding his dissatisfaction with defense counsel. *Selsor*, 22 F.3d at 1032. Applicant's responses to the trial court during the February 14, 2006, pre-trial hearing do not establish a conflict of interest, only that Applicant and trial counsel disagreed about trial strategy and how to proceed with the case. The simple fact that Applicant and his counsel disagreed on trial strategy does not demonstrate a conflict of interest. This is because "[t]he Sixth Amendment provides no right to counsel blindly following defendant's instructions." *Padilla*, 819 F.2d at 956 (citing *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985)). Further, mere "[p]ersonality conflicts are not conflicts of interest." *Hale v. Gibson*, 227 F.3d 1298, 1313 (10th Cir. 2000) (citing *Morris v. Slappy*, 461 U.S. 1, 13 (1983)). Competent representation is what the Sixth Amendment guarantees; it does not guarantee a meaningful relationship with counsel.

*Morris*, 461 U.S. at 14-15. I find that Applicant's vague and conclusory allegations fail to establish that his counsel actively represented conflicting interests and that the alleged conflict of interest adversely affected his counsel's performance. *See Cuyler*, 446 U.S. at 348.

In addition, although Applicant argues that his attorney failed to show him the discovery in his case, his attorney stated in open court that she had reviewed discovery with him several times. *See* Transcript, 2/28/08, p. 2010-14. The appellate court later determined that Applicant had, in fact, viewed discovery in his case. *See Trujillo*, 08CA1614 at 3-5. Pursuant to § 2254(e)(1), the state court's factual determinations are presumed to be correct. Applicant has failed to rebut this presumption by presenting clear and convincing evidence to demonstrate his attorney concealed material discovery from him. *See* 28 U.S.C. § 2254(e)(1).

Finally, Applicant argues that he was prejudiced because his attorney failed to test a shovel used as evidence for the presence of blood and fingerprints. "Whether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and citation omitted). Here, Applicant has failed to make any showing that counsel's decision regarding the shovel was not based on a valid strategic choice. *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (finding that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice."). Even assuming that counsel erred by failing to test the shovel, I find that Applicant has not

demonstrated that he was prejudiced by this mistake.  Indeed, in light of eyewitness testimony from Applicant's neighbor that he saw Applicant pick up a shovel, take the dog to the back of the house, swing the shovel several times, and then heard the dog's screams, it is unclear what probative value would have come from testing the shovel. *See, e.g., Medina v. Barnes*, 71 F.3d 363, 367 (10th Cir. 1995) (finding that because additional evidence was "at most cumulative, and of limited probative value" it could not provide a basis for habeas relief)).

Therefore, having reviewed the record, I find that there is simply no evidence demonstrating that any animosity between Applicant and his trial counsel resulted in such deterioration of their attorney-client relationship that it jeopardized Applicant's right to effective assistance of counsel.  Applicant has simply failed demonstrate that he had "'a conflict of interest, a complete breakdown of communication or an irreconcilable conflict' with his attorney which lead "to an apparently unjust verdict.'"  *Padilla*, 819 F.2d at 955.

I find that the Colorado Court of Appeals applied the appropriate factors and did not reach an unreasonable conclusion.  Accordingly, I find that the Colorado Court of Appeals' conclusion that the trial court did not improperly deny Applicant's motion for substitute counsel is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented.  Therefore, Applicant is not entitled to habeas relief on this claim.

**IV.   Conclusion**

Accordingly, it is ordered:

1. Applicant Joseph Benjamin Trujillo's Amended Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 7) is denied.

2. No certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.

3. This case is dismissed with prejudice.

Dated: November 23, 2011

BY THE COURT:

*s/ David M. Ebel*

David M. Ebel, Senior Judge
United States District Judge